# EXHIBIT A

# EXHIBIT A-1

12/6/2019 2:30 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 39049245
By: Joshua Hall
Filed: 12/6/2019 2:30 PM

# 2019-86563 / Court: 215

CAUSE NO. _____

| | | |
|---|---|---|
| PETROCHEM TRANSPORT, INC. | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| V. | § | |
| | § | HARRIS COUNTY, TEXAS |
| INTERCONTINENTAL TERMINALS | § | |
| COMPANY, LLC | § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

Petrochem Transport, Inc. ("Plaintiff") files this Original Petition against Intercontinental Terminals Company, LLC ("ITC") as follows:

### I.
### DISCOVERY CONTROL PLAN

1.      Discovery in this case is intended to be conducted under Level 3 pursuant to Texas Rule of Civil Procedure 190.4.

### II.
### STATEMENT OF RELIEF SOUGHT

2.      Pursuant to Rule 47(c) of the Texas Rules of Civil Procedure, Plaintiff seeks monetary relief in excess of $250,000 and a judgment for all other relief to which Plaintiff is entitled.

### III.
### PARTIES AND SERVICE

3.      Plaintiff is a Texas corporation with its principal place of business in Harlingen, Cameron County, Texas.

4.      ITC is a Delaware company with its principal place of business in Harris County, Texas and has availed itself to the laws and jurisdiction of the State of Texas. ITC operates a facility in Harris County, Texas in or around the City of Deer Park, Texas along the

Houston Ship Channel (the "ITC Facility").  According to Texas Secretary of State records, ITC maintains a corporate office at 1021 Main Street, Suite 1150, Houston, Texas 77002-6508.  ITC may be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## IV.
## JURISDICTION AND VENUE

5.     This Court has original subject matter and in personam jurisdiction over ITC because at the time of the events in question ITC was doing business in Harris County, Texas in a continuous and systematic way.  ITC's principal place of business is in Harris County, Texas.  ITC is also subject to jurisdiction in this Court due to its commission of a tort or series of torts, and continuing torts, in Harris County, Texas. TEX. CIV. PRAC. & REM. CODE § 17.042(1). The subject matter in controversy is within the jurisdictional limits of this Court.

6.     Venue is proper in Harris County, Texas because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Harris County, Texas. TEX. CIV. PRAC. & REM. CODE§ 15.002(a)(l).

## V.
## FACTUAL BACKGROUND

7.     The ITC Facility is a large petrochemical terminal along the Houston Ship Channel. The ITC Facility is approximately 265 acres and at the time of the incident described below (the "ITC Incident") contained 242 tanks with a storage capacity of 13 million barrels. ITC receives and services its customers' products by ship, barge, pipeline, rail, and truck.

8.     Plaintiff has been in the transportation and hauling business in Texas for over 20 years, and as part of that business owns and operates an interstate bulk hazardous material road transportation company with a facility in Harris County, Texas at 24014 Independence Parkway S. La Porte, Texas ("Plaintiff's Facility"), at which location Plaintiff's maintain it

hauling vehicles, trailers, and related equipment as well as its employees and certain books and records.

9.      On the morning of March 17, 2019, an 80,000 barrel tank at ITC containing naphtha caught fire. Later that day, the fire spread to a second ITC tank containing xylene. Overnight, the fire spread to six additional ITC tanks. The 8 tanks on fire included gasoline blends, toluene, naphtha, xylenes, and blended oils.

10.     The next day, on March 18, two additional ITC tanks caught fire.

11.     The ITC tank fire resulted in evacuations, shelter-in-place orders, and the closure of Plaintiff's Facility (and other surrounding businesses), the Lynchburg Ferry, and State Highway 225.   Access to these highways and right of way is a critical part of Plaintiff's business.

12.     On March 20, ITC publicly reported that the fire was extinguished.

13.     On March 21, air monitoring systems reported elevated levels of benzene, and additional shelter-in-place orders were issued.

14.     On March 22, a containment wall at ITC failed releasing a mixture of firefighting water, foam, and petrochemicals into a drainage ditch that discharged into the Houston Ship Channel via Tucker Bayou. As a result of the discharges, the Houston Ship Channel, including Plaintiff s docks and marine operations, were closed. Three ITC tanks also reignited, and the fire spread to the drainage ditch.

15.     For the next several weeks, Plaintiff's Facility remained either entirely closed or significantly limited due to elevated levels of benzene, the condition of the Houston Ship Channel, road closures, rail closures, and other safety concerns, all resulting from the ITC Incident. Even after Plaintiff's personnel were permitted to return to work, the ITC Incident caused Plaintiff s business to be periodically interrupted due to elevated benzene levels

requiring personnel to shelter-in- place, and it caused Plaintiff's rail service to be significantly limited.

16.     ITC concedes that over just the first 24-hour period, the fire emitted approximately 6,287,543 pounds of carbon monoxide; 957,116 pounds of naphtha (a flammable liquid hydrocarbon mixture); 889,906 pounds of gasoline blend stock; 460,243 pounds of lube oil; 111,758 pounds of toluene (a water-insoluble liquid predominantly used as an industrial feedstock); 73,824 pounds of nitrogen dioxide; and 3,314 pounds of sulfur dioxide.  At least ten 80,000 barrel tanks containing different petrochemicals burned, and there were weeks of elevated benzene levels resulting in closures to schools, businesses, and infrastructure. Plaintiff's Facility and other neighboring facilities were completely closed and/or significantly limited for nearly a month, and Plaintiff continued to experience periodic closures and inconsistent rail, truck, and marine traffic as a result of ongoing safety concerns and cleanup operations for several weeks. The Houston Ship Channel was completely or partially closed for weeks disrupting Plaintiff's marine operations and Plaintiff's customer's operations. Plaintiff's customers were unable to access their products stored at Plaintiff's Facility, and Plaintiff's equipment was physically harmed and sequestered by the ITC Incident.

17.     During and after the initial fire several company trailers and power units were stranded at the location until authorities allowed the Plaintiff access to the Plaintiff's Facility and retrieve the Plaintiff's equipment.  Plaintiff was required to cancel multiple contract loads resulting in loss of income and in significant damage to then existing contractual relations and suffered foreseeable significant business interruption and all attendance damages. Plaintiff continued to incur all expenses related to Plaintiff's Facility while it was inaccessible and sequestered, including

wages to employees unable to work or access the Plaintiff's Facilities and equipment for their work, and rental due for the Plaintiff's Facility.

18.     In addition to causing lost profits and business disruption damages, ITC's conduct forced Plaintiff to incur significant out-of-pocket costs associated with the delays caused by the environmental containment and safety issues surrounding its equipment, retrieval and clean-up of its equipment and property. The damage ITC has caused Plaintiff to suffer is substantial, and Plaintiff's damages will continue to accrue.  Through this lawsuit, Plaintiff seeks the recovery of all of its harms, losses, and damages from  ITC.

## VI.
## CAUSES OF ACTION

**A.** **Negligence**

19.     Plaintiff re-alleges the preceding paragraphs 1 through 18 as if set forth fully herein.

20.     The ITC Incident and the resulting harms and losses suffered by Plaintiff were proximately caused by ITC's negligent conduct, including but not limited to its failure to properly and adequately store products and monitor operations and conduct operations and prevent fire events and control fire events and eliminate fire events and train employees to handle fire events.

21.     As a direct and proximate cause of ITC's negligence, Plaintiff suffered damages in excess of the Court's jurisdictional limits, and Plaintiff seeks recovery from ITC of all of its actual, special, consequential, incidental, and other damages, harms, and losses. Moreover, ITC's acts or omissions involved an extreme degree of risk considering the probability and magnitude of the potential harm to others, and ITC had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or

welfare of others. Plaintiff therefore seeks the recovery of punitive damages from ITC based on its grossly negligent conduct.

**B.**   **Private Nuisance**

22.   Plaintiff re-alleges the preceding paragraphs 1 through 18 as if set forth fully herein.

23.   The ITC Incident created a nuisance. Plaintiff has a private interest not only in the Plaintiff Facility, but also in the rail, truck, and shipping lines that service the Plaintiff Facility and the other means of access to the Plaintiff Facility. The ITC Incident substantially interfered with Plaintiff's interest in the use and enjoyment of its land and caused Plaintiff unreasonable discomfort or annoyance. Plaintiff seeks the recovery of all of its actual, special, consequential, incidental, and other damages, harms, and losses resulting from the nuisance created by ITC. Plaintiff further seeks the recovery of exemplary damages.

**C.**   **Public Nuisance**

24.   Plaintiff re-alleges the preceding paragraphs 1 through 18 as if set forth fully herein.

25.   The ITC Incident created a nuisance. The harm suffered by Plaintiff as a result of the ITC Incident was different in kind from that suffered by the general public because ITC's acts or omissions interfered with Plaintiff's ability to access, operate, and use Plaintiff's Facility.

26.   ITC's conduct interfered with a public right. ITC's conduct adversely affected all or a substantial part of the community. ITC's conduct was unreasonable because it involved a significant interference with the public's health, safety, peace, comfort, or convenience and is continuing in nature and produced a permanent or long-lasting effect that ITC knew or should have known would have a significant effect on a public right.

27.     ITC's conduct caused a special injury to Plaintiff. Plaintiff seeks the recovery of all of its actual, special, consequential, incidental, and other damages, harms, and losses resulting from the nuisance created by ITC. Plaintiff further seeks the recovery of exemplary damages.

**D.      Trespass**

28.     Plaintiff re-alleges the preceding paragraphs 1 through 18  as if set forth fully herein.

29.     ITC trespassed against Plaintiff when it physically, intentionally, and voluntarily interfered with Plaintiff's right of possession of Plaintiff's Facility without authorization. Plaintiff had a lawful right to possess the Plaintiff Facility. ITC's acts or omissions caused air contaminants and contaminated water to intrude onto Plaintiff's property, which caused injury to Plaintiff's right of possession.

30.     Accordingly, Plaintiff seeks recovery of all of its actual, special, consequential, incidental, and other damages, harms, and losses, including cost of restoration or repair, loss of use of land, loss of expected profits from use of land, loss of market value of land, loss of market value of buildings, and lost profits, caused by ITC's trespass. Plaintiff also seeks recovery of exemplary damages.

**E.      Interference and Tortious Interference with Business Relations and Business Operations – Negligent Interruptions of Business Operations**

31.     Plaintiff re-alleges the preceding paragraphs 1 through 18  as if set forth fully herein.

32.     ITC negligently interrupted the regular and ongoing operations of Plaintiffs business.  Its conduct proximately caused the interruption which was foreseeable at the time of the negligent conduct that such conduct would cause injury, and in fact caused such injury, to Plaintiff's right of uninterrupted business operations.

33.     Accordingly, Plaintiff seeks recovery of all of its actual, special, consequential, incidental, and other damages, harms, and losses, including cost of restoration or repair, loss of use of land, loss of expected profits from use of land, loss of market value of land, loss of market value of buildings, and lost profits, caused by ITC's interruption of Plaintiff's business. Plaintiff also seeks recovery of exemplary damages.

## VII.
## CONDITIONS PRECEDENT

34.     All conditions precedent to Plaintiff's claim for relief have been performed, have occurred, or have been waived.

## VIII.
## PRE-AND POST-JUDGMENT INTEREST

35.     Plaintiff seeks recovery of pre- and post-judgment interest at the maximum rate allowed by law.

## IX.
## REQUEST FOR DISCLOSURE

36.     Pursuant to Texas Rule of Civil Procedure 194, Plaintiff requests that ITC disclose within fifty (50) days of service of this suit, the information and materials described in Texas Rule of Civil Procedure 194.2(a)-(1).

## X.
## JURY DEMAND

37.     Plaintiff requests a jury and submits the jury fee along with the filing fees.

## XI.
## PRAYER

38.     Plaintiff respectfully requests that ITC be served with process, that it be required to appear and answer in this lawsuit, and that after a trial or other final hearing on the merits, the Court enter a judgment awarding Plaintiff:

(a)   Its actual, special, consequential, incidental, and other damages, harms, and losses, including but not limited to loss of market value of land, cost of repair, loss of use of land, out of pocket damages, lost profits, and loss of business goodwill;

(b)   Exemplary damages in an amount determined sufficient under the applicable guiding legal principles;

(c)   Costs of court;

(d)   Pre- and post-judgment interest; and

(e)   Any and all further relief, either at law or in equity, to which Plaintiff may show itself justly entitled.

Dated:  December 6, 2019.

Respectfully Submitted,

*/s/  Shelby A. Jordan*
Shelby A. Jordan
State Bar # 11016700
Antonio Ortiz
State Bar No.  24074839;
***Jordan, Holzer & Ortiz P.C.***
900 Bank of America North
500 N. Shoreline,
Corpus Christi, Texas, 78471
Telephone:  (361) 884-5678
Telecopier:  (361) 888-5555
Email:  sjordan@jhwclaw.com
**COUNSEL FOR PLAINTIFF**
**Petrochem Transport, Inc.**

# EXHIBIT A-2

12/23/2019 4:45 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 39482701
By: Joshua Bovell
Filed: 12/23/2019 4:45 PM

CAUSE NO.  201986563

| | | |
|---|---|---|
| PETROCHEM TRANSPORT, INC. | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| V. | § | |
| | § | HARRIS COUNTY, TEXAS |
| INTERCONTINENTAL TERMINALS | § | |
| COMPANY, LLC | § | |
| *Defendant.* | § | 215th JUDICIAL DISTRICT |

## PLAINTIFF'S FIRST AMENDED PETITION

Petrochem Transport, Inc. ("Plaintiff") files this First Amended Petition against Intercontinental Terminals Company, LLC ("ITC") as follows:

### I.
### DISCOVERY CONTROL PLAN

1.     Discovery in this case is intended to be conducted under Level 3 pursuant to Texas Rule of Civil Procedure 190.4.

### II.
### STATEMENT OF RELIEF SOUGHT

2.     Pursuant to Rule 47(c) of the Texas Rules of Civil Procedure, Plaintiff seeks monetary relief in excess of $250,000 and a judgment for all other relief to which Plaintiff is entitled.

### III.
### PARTIES AND SERVICE

3.     Plaintiff is a Texas corporation with its principal place of business in Harlingen, Cameron County, Texas.

4.     ITC is a Delaware company with its principal place of business in Harris County, Texas and has availed itself to the laws and jurisdiction of the State of Texas. ITC operates a facility in Harris County, Texas in or around the City of Deer Park, Texas along the

Houston Ship Channel (the "ITC Facility").  According to Texas Secretary of State records, ITC maintains a corporate office at 1021 Main Street, Suite 1150, Houston, Texas 77002-6508.  ITC may be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## IV.
## JURISDICTION AND VENUE

5.     This Court has original subject matter and in personam jurisdiction over ITC because at the time of the events in question ITC was doing business in Harris County, Texas in a continuous and systematic way.  ITC's principal place of business is in Harris County, Texas.  ITC is also subject to jurisdiction in this Court due to its commission of a tort or series of torts, and continuing torts, in Harris County, Texas. TEX. CIV. PRAC. & REM. CODE § 17.042(1). The subject matter in controversy is within the jurisdictional limits of this Court.

6.     Venue is proper in Harris County, Texas because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Harris County, Texas. TEX. CIV. PRAC. & REM. CODE§ 15.002(a)(l).

## V.
## FACTUAL BACKGROUND

7.     The ITC Facility is a large petrochemical terminal along the Houston Ship Channel. The ITC Facility is approximately 265 acres and at the time of the incident described below (the "ITC Incident") contained 242 tanks with a storage capacity of 13 million barrels. ITC receives and services its customers' products by ship, barge, pipeline, rail, and truck.

8.     Plaintiff has been in the transportation and hauling business in Texas for over 20 years, and as part of that business owns and operates an interstate bulk hazardous material road transportation company with a facility in Harris County, Texas at 2401 Independence Parkway S. La Porte, Texas ("Plaintiff's Facility"), at which location Plaintiff's maintain it

hauling vehicles, trailers, and related equipment as well as its employees and certain books and records.

9.      On the morning of March 17, 2019, an 80,000 barrel tank at ITC containing naphtha caught fire. Later that day, the fire spread to a second ITC tank containing xylene. Overnight, the fire spread to six additional ITC tanks. The 8 tanks on fire included gasoline blends, toluene, naphtha, xylenes, and blended oils.

10.     The next day, on March 18, two additional ITC tanks caught fire.

11.     The ITC tank fire resulted in evacuations, shelter-in-place orders, and the closure of Plaintiff's Facility (and other surrounding businesses), the Lynchburg Ferry, and State Highway 225.   Access to these highways and right of way is a critical part of Plaintiff's business.

12.     On March 20, ITC publicly reported that the fire was extinguished.

13.     On March 21, air monitoring systems reported elevated levels of benzene, and additional shelter-in-place orders were issued.

14.     On March 22, a containment wall at ITC failed releasing a mixture of firefighting water, foam, and petrochemicals into a drainage ditch that discharged into the Houston Ship Channel via Tucker Bayou. As a result of the discharges, the Houston Ship Channel, was closed. Three ITC tanks also reignited, and the fire spread to the drainage ditch.

15.     For the next several weeks, Plaintiff's Facility remained either entirely closed or significantly limited due to elevated levels of benzene, the condition of the Houston Ship Channel, road closures, rail closures, and other safety concerns, all resulting from the ITC Incident. Even after Plaintiff's personnel were permitted to return to work, the ITC Incident caused Plaintiff's business to be periodically interrupted due to elevated benzene levels requiring personnel to shelter-in- place.

16.     ITC concedes that over just the first 24-hour period, the fire emitted approximately 6,287,543 pounds of carbon monoxide; 957,116 pounds of naphtha (a flammable liquid hydrocarbon mixture); 889,906 pounds of gasoline blend stock; 460,243 pounds of lube oil; 111,758 pounds of toluene (a water-insoluble liquid predominantly used as an industrial feedstock); 73,824 pounds of nitrogen dioxide; and 3,314 pounds of sulfur dioxide.  At least ten 80,000 barrel tanks containing different petrochemicals burned, and there were weeks of elevated benzene levels resulting in closures to schools, businesses, and infrastructure. Plaintiff's Facility and other neighboring facilities were completely closed and/or significantly limited for nearly a month, and Plaintiff continued to experience periodic closures and inconsistent rail, truck, and marine traffic as a result of ongoing safety concerns and cleanup operations for several weeks. The Houston Ship Channel was completely or partially closed for weeks disrupting Plaintiff's customer's operations. Plaintiff's customers were unable to access their products stored at ITC.

17.     During and after the initial fire several company trailers and power units were stranded at the location until authorities allowed the Plaintiff access to the Plaintiff's Facility and retrieve the Plaintiff's equipment.  Plaintiff was required to cancel multiple contract loads resulting in loss of income and in significant damage to then existing contractual relations and suffered foreseeable significant business interruption and all attendance damages. Plaintiff continued to incur all expenses related to Plaintiff's Facility while it was inaccessible and sequestered, including wages to employees unable to work or access the Plaintiff's Facilities and equipment for their work, and rental due for the Plaintiff's Facility.

18.     In addition to causing lost profits and business disruption damages, ITC's conduct forced Plaintiff to incur significant out-of-pocket costs associated with the delays

caused by the environmental containment and safety issues surrounding its equipment, retrieval and clean-up of its equipment and property.  The damage ITC has caused Plaintiff to suffer is substantial, and Plaintiff's damages will continue to accrue.  Through this lawsuit, Plaintiff seeks the recovery of all of its harms, losses, and damages from  ITC event.

## VI.
## CAUSES OF ACTION

**A.      Negligence**

19.     Plaintiff re-alleges the preceding paragraphs 1 through 18 as if set forth fully herein.

20.     The ITC Incident and the resulting harms and losses suffered by Plaintiff were proximately caused by ITC's negligent conduct, including but not limited to its failure to properly and adequately store products and monitor operations and conduct operations and prevent fire events and control fire events and eliminate fire events and train employees to handle fire events.

21.     As a direct and proximate cause of ITC's negligence, Plaintiff suffered damages in excess of the Court's jurisdictional limits, and Plaintiff seeks recovery from ITC of all of its actual, special, consequential, incidental, and other damages, harms, and losses. Moreover, ITC's acts or omissions involved an extreme degree of risk considering the probability and magnitude of the potential harm to others, and ITC had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. Plaintiff therefore seeks the recovery of punitive damages from ITC based on its grossly negligent conduct.

**B.      Private Nuisance**

22.     Plaintiff re-alleges the preceding paragraphs 1 through 18 as if set forth fully

herein.

23.     The ITC Incident created a nuisance. Plaintiff has a private interest not only in the Plaintiff Facility, but also in the rail, truck, and shipping lines that service the Plaintiff Facility and the other means of access to the Plaintiff Facility. The ITC Incident substantially interfered with Plaintiff's interest in the use and enjoyment of its land and caused Plaintiff unreasonable discomfort or annoyance.  Plaintiff seeks the recovery of all of its actual, special, consequential, incidental, and other damages, harms, and losses resulting from the nuisance created by ITC.  Plaintiff further seeks the recovery of exemplary damages.

**C.     Public Nuisance**

24.     Plaintiff re-alleges the preceding paragraphs 1 through 18  as if set forth fully herein.

25.     The ITC Incident created a nuisance. The harm suffered by Plaintiff as a result of the ITC Incident was different in kind from that suffered by the general public because ITC's acts or omissions interfered with Plaintiff's ability to access, operate, and use Plaintiff's Facility.

26.     ITC's conduct interfered with a public right. ITC's conduct adversely affected all or a substantial part of the community.  ITC's conduct was unreasonable because it involved a significant interference with the public's health, safety, peace, comfort, or convenience and is continuing in nature and produced a permanent or long-lasting effect that ITC knew or should have known would have a significant effect on a public right.

27.     ITC's conduct caused a special injury to Plaintiff. Plaintiff seeks the recovery of all of its actual, special, consequential, incidental, and other damages, harms, and losses resulting from the nuisance created by ITC. Plaintiff further seeks the recovery of exemplary damages.

D.      **Trespass**

28.      Plaintiff re-alleges the preceding paragraphs 1 through 18  as if set forth fully herein.

29.      ITC trespassed against Plaintiff when it physically, intentionally, and voluntarily interfered with Plaintiff's right of possession of Plaintiff's Facility without authorization. Plaintiff had a lawful right to possession of the Plaintiff Facility. ITC's acts or omissions caused air contaminants and contaminated water to intrude onto Plaintiff's property, which caused injury to Plaintiff's right of possession.

30.      Accordingly, Plaintiff seeks recovery of all of its actual, special, consequential, incidental, and other damages, harms, and losses, including cost of restoration or repair, loss of use of land, loss of expected profits from use of land, loss of market value of land, loss of market value of buildings, and lost profits, caused by ITC's trespass. Plaintiff also seeks recovery of exemplary damages.

E.      **Interference and Tortious Interference with Business Relations and Business Operations – Negligent Interruptions of Business Operations**

31.      Plaintiff re-alleges the preceding paragraphs 1 through 18  as if set forth fully herein.

32.      ITC negligently interrupted the regular and ongoing operations of Plaintiffs business.  Its conduct proximately caused the interruption which was foreseeable at the time of the negligent conduct that such conduct would cause injury, and in fact caused such injury, to Plaintiff's right of uninterrupted business operations.

33.      Accordingly, Plaintiff seeks recovery of all of its actual, special, consequential, incidental, and other damages, harms, and losses, including cost of restoration or repair, loss of use of land, loss of expected profits from use of land, loss of market value of land, loss of market value of buildings, and lost profits, caused by ITC's interruption of Plaintiff's business.

Plaintiff also seeks recovery of exemplary damages.

## VII.
## CONDITIONS PRECEDENT

34.     All conditions precedent to Plaintiff's claim for relief have been performed, have occurred, or have been waived.

## VIII.
## PRE-AND POST-JUDGMENT INTEREST

35.     Plaintiff seeks recovery of pre- and post-judgment interest at the maximum rate allowed by law.

## IX.
## REQUEST FOR DISCLOSURE

36.     Pursuant to Texas Rule of Civil Procedure 194, Plaintiff requests that ITC disclose within fifty (50) days of service of this suit, the information and materials described in Texas Rule of Civil Procedure 194.2(a)-(1).

## X.
## JURY DEMAND

37.     Plaintiff requests a jury and submits the jury fee along with the filing fees.

## XI.
## PRAYER

38.     Plaintiff respectfully requests that ITC be served with process, that it be required to appear and answer in this lawsuit, and that after a trial or other final hearing on the merits, the Court enter a judgment awarding Plaintiff:

    (a)     Its actual, special, consequential, incidental, and other damages, harms, and losses, including but not limited to loss of market value of land, cost of repair, loss of use of land, out of pocket damages, lost profits, and loss of business goodwill;

    (b)     Exemplary damages in an amount determined sufficient under the applicable guiding legal principles;

(c)     Costs of court;

(d)     Pre- and post-judgment interest;  and

(e)     Any and all further relief, either at law or in equity, to which
Plaintiff may show itself justly entitled.

Dated:  December 23, 2019.

Respectfully Submitted,

/s/  Shelby A. Jordan
Shelby A. Jordan
State Bar # 11016700
Antonio Ortiz
State Bar No.  24074839;
**Jordan, Holzer & Ortiz P.C.**
900 Bank of America North
500 N. Shoreline,
Corpus Christi, Texas, 78471
Telephone:   (361) 884-5678
Telecopier:   (361) 888-5555
Email:  sjordan@jhwclaw.com
**COUNSEL FOR PLAINTIFF**
**Petrochem Transport, Inc.**

# EXHIBIT A-3

CAUSE NO. 2019-86563

| | | |
|---|---|---|
| PETROCHEM TRANSPORT, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| INTERCONTINENTAL TERMINALS | § | |
| COMPANY LLC, | § | |
| | § | |
| Defendant. | § | 215th JUDICIAL DISTRICT |

## DEFENDANT INTERCONTINENTAL TERMINALS COMPANY LLC'S MOTION TO TRANSFER VENUE AND, SUBJECT THERETO, <u>ORIGINAL ANSWER</u>

Defendant Intercontinental Terminals Company LLC ("Defendant") files its Motion to Transfer Venue and, subject thereto, Original Answer to Plaintiff's First Amended Petition (the "Petition").

### I.      Motion to Transfer Venue

Pursuant to Rule 257 of the Texas Rules of Civil Procedure, Defendant respectfully requests that venue for this action be transferred from Harris County to another county of proper venue under the Texas Civil Practice and Remedies Code. Defendant will supplement the record with a brief in support of its motion and necessary affidavit upon completion of sufficient discovery.

### II.      General Denial

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant generally denies the allegations and claims set forth in Plaintiff's Petition and demands strict proof thereof by a preponderance of the credible evidence, as required by the Constitution and laws of the State of Texas.

### III.    Affirmative Defenses

1.      Plaintiff fails to state a claim upon which relief can be granted.

2.      Plaintiff's claims are barred because Plaintiff lacks standing to bring, in whole or in part, the claims alleged in the Petition.

3.      Plaintiff's claims are barred in whole or in part by the economic loss rule under applicable law.

4.      Defendant asserts the defense of contributory or comparative negligence to the extent that the damages and injuries alleged in Plaintiff's Petition were legally and proximately caused, in whole or in part, by the negligence, fault, negligence per se, and other culpable conduct of other persons or parties who failed to exercise the requisite degree of care and caution, entitling Defendant to have the Court and jury apply the doctrine of comparative negligence established by Tex. Civ. Prac. & Rem. Code § 33.001 *et seq.* to reduce any judgment against it by the degree of negligence or fault attributable to any other person or party.

5.      Defendant asserts the defense of superseding or intervening cause to the extent that the damages and injuries alleged in Plaintiff's Petition were legally and proximately caused by separate and independent events or agencies that were not the result of Defendant's actions or reasonably foreseeable to Defendant or within its control.

6.      Defendant denies that the alleged injuries of Plaintiff were proximately caused by any alleged act or omission of Defendant.

7.      As an affirmative defense, the evidence may show that one or more claims of Plaintiff are barred in whole or in part by the failure to mitigate damages.

8.      As an affirmative defense, the evidence may show that one or more of Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

9.      All conduct and activities of Defendant, as alleged in the Petition, conformed to applicable statutes, government regulations, government-issued permits, and industry standards based upon the state of knowledge at the time alleged in the Petition and/or were taken at the specific direction of or in conjunction with or with approval or ratification by federal, state, and/or local governmental authorities.

10.     Alternatively, should any amount be cast against Defendant in judgment, Defendant is entitled to a credit and off-set for any and all payments made to Plaintiff for any purpose arising out of the incident and/or claims made the subject of this litigation, including, but not limited to, settlement credits.

11.     Defendant denies any liability for punitive or exemplary damages.  In any event, Plaintiff's claims for exemplary damages are limited by Tex. Civ. Prac. & Rem. Code § 41.008.

12.     Defendant denies any liability for punitive or exemplary damages.  In any event, Plaintiff's claim for punitive damages against Defendant cannot be sustained because an award of punitive damages under Texas law without proof of every element beyond a reasonable doubt would violate Defendant's rights under Amendments IV, V, VI, and XIV of the United States Constitution and under Sections 9, 10, 14, and 19 of Article I of the Texas Constitution.

13.     Defendant denies any liability for punitive or exemplary damages.  In any event, Plaintiff's claims for punitive damages against Defendant cannot be sustained because an award of punitive damages under Texas law by a jury that (1) is not provided any standard of sufficient clarity for determining the appropriateness or the appropriate size of any punitive damages award; (2) is not instructed on the limits of punitive damages imposed by the applicable principles of deterrence and punishment; (3) is not expressly prohibited from awarding punitive

damages or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics; (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible; and (5) is not subject to judicial review on the basis of objective standards, would violate Defendant's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Section 19 of Article I of the Texas Constitution.

14.     Defendant denies any liability for punitive or exemplary damages.  In any event, a punitive damages award would violate the prohibition against excessive fines contained in the Eighth Amendment to the United States Constitution, as embodied in the due process clause of the Fourteenth Amendment to that Constitution, and Article I, § 19 of the Texas Constitution.

15.     Defendant reserves the right to assert other affirmative defenses, cross-claims, and designations of responsible third parties as discovery proceeds.

## IV.     Right to Amend

Defendant reserves the right to amend this Answer.

## V.     Request for Jury

Defendant requests a trial by jury and will pay the required fee in accordance with the deadlines imposed by the Texas Rules of Civil Procedure.

## VI.     Prayer

Defendant requests that this Court, after trial or final hearing of this case, enter judgment in Defendant's favor, that Plaintiff take nothing by reason of this suit, and that the Court award Defendant its costs of court and expenses and all other relief to which it is entitled.

Respectfully submitted,

BAKER BOTTS L.L.P.

By:  */s/ Russell C. Lewis*
       Russell C. Lewis
       Texas Bar No. 24036968
       Michael S. Goldberg
       Texas Bar No. 08075800
       Benjamin Gonsoulin
       Texas Bar No. 24099682
       Kelly Hanen
       Texas Bar No. 24101862
       Elizabeth Furlow
       Texas Bar No. 24109899
       One Shell Plaza
       910 Louisiana Street
       Houston, Texas 77002-4995
       Telephone:  (713) 229-1767
       Facsimile:  (713) 229-2867
       russell.lewis@bakerbotts.com
       michael.goldberg@bakerbotts.com
       ben.gonsoulin@bakerbotts.com
       kelly.hanen@bakerbotts.com
       elizabeth.furlow@bakerbotts.com

PHELPS DUNBAR LLP

By: _/s/ Ivan M. Rodriguez_____
      Ivan M. Rodriguez
      Texas Bar No. 24058977
      Marc G. Matthews
      Texas Bar No. 24055921
      Michael E. Streich
      Texas Bar No. 24079408
      500 Dallas, Suite 1300
      Houston, Texas  77002
      Telephone:  (713) 626-1386
      Telecopier:  (713) 626-1388
      Ivan.rodriguez@phelps.com
      Marc.matthews@phelps.com
      Michael.streich@phelps.com

ATTORNEYS FOR DEFENDANT
INTERCONTINENTAL TERMINALS
COMPANY LLC

## CERTIFICATE OF SERVICE

This certifies that a copy of the above and foregoing was sent by electronic mail to the following counsel of record on this 6th day of January 2020:

Shelby A. Jordan
Antonio Ortiz
Jordan, Holzer & Ortiz P.C.
900 Bank of America North
500 N. Shoreline
Corpus Christi, TX 78471
Telephone: (361) 884-5678
Facsimile: (361) 888-5555
sjordan@jhwclaw.com
aortiz@jhwclaw.com
*Attorneys for Plaintiff Petrochem Transport, Inc.*

*/s/ Russell C. Lewis*
Russell C. Lewis

7